MICHAEL JASON LEE (Bar No. 206110)
michael@mjllaw.com
**LAW OFFICES OF MICHAEL JASON LEE, APLC**
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
Telephone: (858) 550-9984

DAVID D. MESA (Bar No. 257488)
david.mesa@pierferd.com
**PIERSON FERDINAND LLP**
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone: (415) 915-4415
Facsimile: (415) 890-4845

Attorneys for Applicant
DELORAZE LIMITED

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| *In re* Application of: | Case No. |
| DELORAZE LIMITED | |
| Applicant | **APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES** |
| For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents Under 28 U.S.C. § 1782 to Kotaro Shimogori for Use in Foreign Proceedings | |

# TABLE OF CONTENTS

PAGE(S)

APPLICATION ............................................................................................................................1

MEMORANDUM .......................................................................................................................2

I. INTRODUCTION ...........................................................................................................2

II. FACTUAL BACKGROUND ..........................................................................................4

    A. The Relevant Entities (Applicant Deloraze Limited and PDN) ............4

    B. The Processing Agreement with PDN ...................................................5

    C. Processing Problems Emerge and PDN Fails to Make a Single Payment of the $290,000 Owed to Deloraze ...........................6

    D. Foreign Proceedings ...............................................................................7

III. THE CONTEMPLATED DISCOVERY .......................................................................7

IV APPLICANT'S LOCATION ..........................................................................................8

V. LEGAL STANDARD .....................................................................................................8

VI. ARGUMENT .................................................................................................................10

    A. All Statutory and Discretionary Factors Favor Permitting the Requested Discovery ......................................................................10

        1. Deloraze's Application Satisfies the Statutory Requirements ..10

            a. Application Is An "Interested Person." ..........................10

            b. The Request Discovery Is for Use in Conjunction with Proceedings Before Foreign Tribunals ..................11

            c. Kotaro Shimogari Resides in and Can Be Found in the Eastern District of California .................................12

        2. The Discretionary Factors Favor Granting the Requested Discovery .................................................................................12

            a. Jurisdictional Reach of the Foreign Tribunal ................12

            b. Nature and Receptivity of Foreign Tribunal ..................13

            c. Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies ................................................14

            d. Unduly Intrusive or Burdensome Requests ...................15

VII. CONCLUSION .............................................................................................................16

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Brandi-Dohorn v. IKB Deutsch Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) .................................................................................................. 15

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d. Cir.1995) ................................................................................................ 14

*Government of Ghana v. ProEnergy Servs.*, LLC,
  2011 U.S. Dist. LEXIS 75029 at *12 (W.D. Mo. June 6, 2011) .............................................. 14

*In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*,
  Case No. M19-88, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) ................................ 14

*In re Application of Grupo Qumma*,
  No. M 8-85 (DC), 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) .................................... 14

*In re Euromepa S.A.*,
  51 F.3d 1095 (2d Cir. 1995) ................................................................................................ 13

*In re Letter of Request from Crown Prosecution Serv. Of United Kingdom*,
  870 F.2d 686 (D.C. Cir. 1989) ........................................................................................ 11, 12

*In re Letters Rogatory Issued by the National Court of First Instance in Commercial Matters N.23 of the Fed. Capital of the Argentinean Republic*,
  144 F.R.D. 272 (3d Cir. 1992) ............................................................................................. 12

*In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*,
  848 F.2d 1151 (11th Cir. 1988) ........................................................................................... 11

*In the Matter of the Application of Oxus Gold PLC For Assistance Before a Foreign Tribunal*,
  2007 U.S. Dist. LEXIS 24061, at *18 (D.N.J. April 2, 2007) ................................................ 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ...................................................................................................... passim

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019) ................................................................................................. 9

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2nd Cir. 2018) ................................................................................................ 8

*LVL-USA* LLC, 2020 WL 6051310, at *2 .................................................................................. 10

*Mees v. Buiter*,
  793 F.3d 291 (2nd Cir. 2015) ............................................................................................. 11

**Statutes**

28 U.S.C. § 1782 ..................................................................................................................... passim

28 U.S.C. § 1782(a) ................................................................................................................. passim

Applicant Deloraze Limited ("Deloraze" or "Applicant"), by and through its undersigned counsel, hereby brings the instant Application to Conduct Discovery Pursuant to 28 U.S.C. § 1782 ("Application") for the entry of an order granting Applicant leave to subpoena documents and testimony from Pan Digital Network Limited's Director, Kotaro Shimogori ("Respondent Shimogori") for use in foreign litigation.  This Application is supported by the Declarations of Savvas Kousoulos and Michael Jason Lee, Esq.  Applicant respectfully requests that this Application be granted in its entirety.

DATED:	April 11, 2024	LAW OFFICES OF MICHAEL JASON LEE, APLC

By: /s/ Michael Jason Lee
    Michael Jason Lee (SBN 206110)
    Attorney for Applicant
    DELORAZE LIMITED

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Applicant seeks an order allowing it to subpoena documents and testimony from Respondent Shimogori as he possesses information concerning funds owed to Applicant by an entity for which Respondent is a Director: Pan Digital Network Limited ("PDN"). As more fully described herein, Applicant contracted with PDN to serve as a payment processor or "paymaster" for one of Applicant's merchant clients (hereinafter, "D-Client"). As paymaster, PDN agreed to process various debit and credit card transactions on behalf of D-Client. PDN, however, failed to remit funds owed to Applicant and D-Client for these transactions. In total, PDN owes Applicant approximately $290,000.00.

Applicant believes the approximately $290,000 of missing funds were processed through a merchant account held by PDN, then fraudulently misappropriated by PDN. (Declaration of Savvas Kousoulos ("Kousoulos Decl.") at ¶ 4; Declaration of Michael Jason Lee ("Lee Decl.") at ¶ 3.) Indeed, through the instant Application, Deloraze seeks to uncover the fraudulent payment processing scheme PDN used to misappropriate Deloraze's and its client's funds, as well as the location of the funds themselves.

Deloraze intends to use this information as part of a lawsuit against PDN. Applicant anticipates bringing suit in the High Court of Justice in London ("High Court of Justice") as PDN was formed, registered and is believed to be currently operating in London. (Lee Decl. at ¶ 4.) Deloraze has retained litigation counsel in the United Kingdom for the purpose of filing a claim against PDN with the High Court of Justice. (*Id.*)

Respondent Shimogori is a Director of PDN, and one of only two Directors of PDN[1]. (*Id.* at 5.) He is also a controlling shareholder of PDN, a UK limited liability

---

[1] See **Exhibits 4** and **5** to Lee Decl., PDN's Registered Balance Sheet filed with Companies House on September 29, 2023 and PDN's Appointment of Director filed with Companies House on April

2

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES

company, but lives and operates PDN out of his residence in Carmichael, California, located in Sacramento County. (*Id.*) Through the instant application, Applicant seeks the aid of this Court in obtaining testimony and documents from Respondent Shimogori concerning (1) D-Client's transactions and/or the payments owed to Applicant, including but not limited to an itemized reconciliation of all processing inclusive of any debits (discount rates, chargebacks, chargebacks fees) from the first day of processing through the last (Exh. 1 to Lee Decl., Nos. 1-18); (2) communications with and documents relating to PDN's business bank account and merchant account with Equity Bank Limited, including but not limited to PDN's merchant agreement, documents relating to PDN's direct processing relationship with Equity Bank Limited, and any agreements that reflect that fees and/or fines would be passed to PDN's clients, as the merchant of record (Exh. 1 to Lee Decl., Nos. 19-25); (3) communications with and documents relating to $25,000 of purported Visa-related charges and/or fines relating to Applicant, including, but not limited to the 5 identified transactions PDN claims form the basis for the imposition of said Visa-related charges and/or fines ("5 IDENTIFIED TRANSACTIONS") (Exh. 1 to Lee Decl., No. 26); (4) communications with and documents relating to any other fines or fees assessed relating to Applicant's transactions, including, but not limited to a purported $25,000 "Bank Fine" and $15,000 "Fee to the bank representative" claimed by PDN to have been assessed as a result of 5 IDENTIFIED TRANSACTIONS (Exh. 1 to Lee Decl., No. 27). (Lee Decl. at ¶ 7.) The discovery sought is relevant to determine: (1) the whereabouts of the misappropriated funds owed to Deloraze by PDN; (2) the details behind PDN's business and merchant account through which $290,000 of D-Client's transactions were processed; and (3) the details behind PDN's fraudulent payment processing scheme used to misappropriate funds owed to Deloraze and D-Client. (*Id.*)

---

1, 2021, respectively. The other director is Michael Paul Norton of England, who was appointed as Director on April 1, 2021. *Id.*

## II. FACTUAL BACKGROUND

### A. The Relevant Entities (Applicant Deloraze Limited and PDN)

Deloraze is a Cyprus-registered company that provides payment consulting services to internet businesses. Deloraze's clients ("merchants") provide products and services to their respective customers in exchange for payments made via debit and credit cards, including those issued by Visa and Mastercard. (Kousoulos Decl. at ¶ 3.) Such cards are issued by a bank (the "issuing bank") which receives funds processed through the card payments including posting to the credit card account and then transmitting the amount of the payment, less fees kept by the bank, back to the merchants.

At bottom, the dispute underlying this Application concerns funds owed to one of Deloraze's merchant clients: D-Client. (*Id.* at ¶ 4.) Responsibility for the receipt and collection of these funds, however, was contractually delegated to Deloraze in January 2023 as part of its payment consulting services, which include managing and collecting payments on behalf of the merchant. (*Id.*)

As part of its services, Deloraze sources and engages third-party payment processors to act as intermediaries between banks and Deloraze's merchants (like D-Client) to process debit and credit card payments. (*Id.* at ¶ 5.)

The payment processor in this matter is PDN, a UK limited liability company. (*Id.*) Respondent Shimogori is, and at all relevant times, was a director of PDN. (*Id.* at ¶ 6.)

A payment processor typically has an existing arrangement with an "acquiring bank" who acquires (a/k/a processes) merchants' transactions through an electronic gateway, settles and clears the amounts in the merchants' accounts, and then transmits the merchants' funds, less the bank's earned fees, to the payment processor via bank transfer. (*Id.* at ¶ 7.) In this case, the acquiring bank was Equity Bank Limited. (*Id.*)

Upon receiving transfers from the acquiring bank, a payment processor is typically supposed to transmit payment, less the payment processor's fee (usually a

modest percentage of the gross amount processed), to the merchants or, as is the case here, to a payment processing facilitator like Deloraze. (*Id.* at ¶ 8.) This payment represents the net payment from the underlying merchant's customers for the merchant's products and/or services. (*Id.*) The role of transmitting revenues to merchants sourced from the card payments of their respective customers has been referred to in the e-commerce industry as a "paymaster" function. (*Id.* at ¶ 9.) Thus, there are often four main parties to a typical merchant transaction:

- The merchant (Deloraze's client);
- The payment processing facilitator (Deloraze);
- The payment processor and paymaster (PDN); and
- The acquiring bank (Equity Bank Limited).

(*Id.*) The dispute underlying this Application is centered on PDN's failure to remit approximately $290,000.00 to Deloraze, which PDN is believed to have received either directly from Equity Bank Limited or indirectly through one or more entities that PDN controls or subcontracted to. (*Id.* at ¶ 10.)

### B. The Processing Agreement with PDN

On or about October 25, 2022, Deloraze identified PDN as a suitable payment processing partner for its merchant clients. (*Id.* at ¶ 11.)

PDN and Deloraze engaged in several preliminary discussions in the weeks leading to October 25, 2022, with the entities entering into a Data, Logistics and Service Processing Agreement on December 5, 2022 ("Processing Agreement"). (*Id.* at ¶ 12.)

PDN agreed to operate as payment processor and paymaster to Deloraze/D-Client by disbursing the processed payments to D-Client, less the respective fees. (*Id.* at ¶ 13.)

Prior to signing the Processing Agreement, Deloraze requested PDN to provide supporting documents to show they would be able to provide the payment processing services described in the Processing Agreement, and in response, PDN

provided Deloraze with a copy of an "Outsourced Agreement" between AuthPay and PDN identifying AuthPay as holding a merchant account with Equity Bank Limited. (*Id.* at ¶ 14.)

Respondent Shimogori signed the Processing Agreement, on behalf of PDN as its Director, on December 5, 2022. (*Id.* at ¶ 15.) Georgios Papadopoulos, Director of Deloraze, signed on behalf of Deloraze on November 30, 2022. (*Id.*)

Upon receipt of any processing funds, PDN was required to remit them (less its fee) to Deloraze. (*Id.* at ¶ 16.) PDN was also required to compile and send weekly Invoices (reflecting settlement reports) to Deloraze to help monitor and reconcile D-Client's transactions, which it failed to do. (*Id.* at ¶ 17.) The first transaction was processed in January 2023 and the last transaction was processed in February or March 2023. (*Id.* at ¶ 18.) Yet no Invoices or settlement reports covering any transactions were ever received, thereby leaving several weeks of transactions unaccounted for. (*Id.* at ¶ 19.)

### C. Processing Problems Emerge and PDN Fails to Make a Single Payment of the $290,000 Owed to Deloraze

PDN did not remit so much as one payment to Deloraze. (*Id.* at ¶ 19.) At present, Deloraze believes that PDN has failed and refuses to timely remit a total of **$290,000.00** owed to Applicant. (*Id.*) PDN's first settlement payment was due to Deloraze on February 20, 2022. (*Id.*)

On February 22, 2023 PDN sent an e-mail to Applicant in which it claimed the funds were being used to offset $325,000 in fines imposed by Visa and Equity Bank Limited. (*Id.* at ¶ 20.)

In response to these issues, Applicant has repeatedly pressed PDN for supporting documents demonstrating the claimed $325,000 in fines and fees by Visa and Equity Bank Limited were actually imposed. (*Id.* at ¶ 21.) To date, no such supporting documents have been provided by PDN. (*Id.*)

    **D.**    **Foreign Proceedings**

Based on the foregoing, once Applicant has the information and documentation responsive to the proposed subpoenas in-hand, it intends to initiate legal proceedings against PDN in the High Court of London. (Lee Decl. at ¶ 4.)

## III.    THE CONTEMPLATED DISCOVERY

Applicant now seeks the assistance of this Court in obtaining information critical to its efforts to recover the funds it is owed. (*Id.* at ¶ 5.) As set forth above, the contemplated discovery is narrowly tailored to the facts and circumstances surrounding Respondent's involvement in the events described herein, as well as PDN's payment processing scheme used to misappropriate funds owed to Applicant. (*Id.*)

By this Application, Applicant seeks to obtain relevant testimony and records relating to:

| Deposition Topics and Document Requests | Relevance to Anticipated UK litigation |
|---|---|
| D-Client's transactions and/or the payments owed to Applicant, including but not limited to an itemized reconciliation of all processing inclusive of any debits (discount rates, chargebacks, chargebacks fees) from the first day of processing through the last (Exh. 1 to Lee Decl., Nos. 1-18). | Relevant to determine the whereabouts of the misappropriated funds owed to Deloraze by PDN. |
| Communications with and documents relating to PDN's business bank account and merchant account with Equity Bank Limited, including but not limited to PDN's merchant agreement, documents relating to PDN's direct processing relationship with Equity Bank Limited, and any agreements that reflect that fees and/or fines would be passed to PDN's clients, as the merchant of record (Exh. 1 to Lee Decl., | Relevant to determine the whereabouts of the misappropriated funds owed to Deloraze by PDN; <br><br> Relevant to determine the details behind PDN's business and merchant account through which more than $290,000 of D-Client's transactions were processed. |

| | |
|---|---|
| Nos. 19-25). | |
| Communications with and documents relating to $25,000 of purported Visa-related charges and/or fines relating to Applicant, including, but not limited to the 5 IDENTIFIED TRANSACTIONS (Exh. 1 to Lee Decl., No. 26). | Relevant to determine the details behind PDN's fraudulent payment processing scheme used to misappropriate funds owed to Deloraze and D-Client. |
| Communications with and documents relating to any other fines or fees assessed relating to Applicant's transactions, including, but not limited to a purported $25,000 "Bank Fine" and $15,000 "Fee to the bank representative" claimed by PDN to have been assessed as a result of 5 IDENTIFIED TRANSACTIONS (Exh. 1 to Lee Decl., No. 27). | Relevant to determine the details behind PDN's fraudulent payment processing scheme used to misappropriate funds owed to Deloraze and D-Client. |

On information and belief, Applicant's requests should not yield a significant volume of documents. (*Id.* at ¶ 8.) Further to the same, the requests within the proposed subpoena are narrowly tailored to the allegations underlying the dispute, including the specific payment transactions in question. (*Id.*)

## IV. APPLICANT'S LOCATION

Applicant is a company registered in Cyprus with its principal place of business located in 41 Themistoklis Dervis Street, Hawaii Tower, 1st Floor, Office 106, Nicosia, Cyprus. (Kousoulos Decl. at ¶ 22.)

## V. LEGAL STANDARD

The fundamental purpose of Section 1782 is to provide a procedure whereby a qualified applicant may obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2nd Cir. 2018). Under 28 U.S.C. § 1782(a), "[t]he district court in which a person

resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court."  The policy behind Section 1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful, but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel,* 542 U.S. at 262.

A district court is authorized to grant an application for discovery under Section 1782 if the following three statutory requirements are met:

(1) the person from whom discovery is sought resides or is found within the district;

(2) the discovery is for use in a proceeding before a foreign or international tribunal; and

(3) the application is made by a foreign or international tribunal or any interested person.

*Khrapunov v. Prosyankin,* 931 F.3d 922, 925 (9th Cir. 2019) , citing 28 U.S.C. § 1782(a).

If the statutory requirements are met, a district court may, in its discretion, grant the application. The Supreme Court has identified four discretionary factors that the district court should consider when ruling on an application made under Section 1782:

(1) whether the person from whom the discovery is sought is a participant in the foreign proceeding;

(2) the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign county or the United States; and

(4) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests.

*Id.* (citing *Intel*, 542 U.S. at 264-265).

## VI. ARGUMENT

### A. All Statutory and Discretionary Factors Favor Permitting the Requested Discovery

The highly relevant and narrowly tailored discovery sought by Deloraze from Respondent Shimogori, is precisely the type of discovery contemplated by Section 1782. Deloraze's Section 1782 application satisfies each of the statutory factors, and the discretionary factors all favor permitting Deloraze to take the requested, limited third-party discovery from Respondent.

#### 1. Deloraze's Application Satisfies the Statutory Requirements

##### a) Applicant Is An "Interested Person."

As explained above, Applicant will be party to a foreign proceeding in the High Court of London. Notwithstanding that the proceeding has not yet been initiated, Applicant still qualifies as an "interested party." *See Intel*, 542 U.S. at 256 (An 'interested person' "plainly reaches beyond the universe of persons designated 'litigant'"). Moreover, once the litigation has ensued, as a party in foreign litigation, Applicant will further satisfy the "interested person" requirement of Section 1782. *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke Section 1782."); *see also In re LVL-USA* LLC, 2020 WL 6051310, at *2 (a party to foreign litigation is an interested person under Section 1782).

/ / /

/ / /

### b) The Requested Discovery Is for Use in Conjunction with Proceedings Before Foreign Tribunals.

As discussed above, Applicant seeks discovery from Respondent to obtain background information specific to its merchant account through which D-Client's payment transactions were processed. Applicant seeks this information to facilitate recovery of unpaid funds in proceedings before the High Court in London. (Lee Decl. at ¶ 4.)

While Section 1782 requires that the evidence sought be "for use in a proceeding in a foreign or international tribunal," the Supreme Court has rejected the view that "Section 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent.'" *Intel*, 542 U.S. at 259.  Rather, it held that a foreign proceeding only had to be "within reasonable contemplation." *Id.* (citation omitted); *Mees v. Buiter*, 793 F.3d 291, 299 (2nd Cir. 2015) (rejecting argument that pre-litigation discovery sought via Section 1782 required a showing that applicant could not commence foreign proceeding absent the discovery sought).

In deciding whether this requirement of Section 1782 is met, the district court should ask whether "there [is] sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially." *In re Letter of Request from Crown Prosecution Serv. Of United Kingdom*, 870 F.2d 686, 691 (D.C. Cir. 1989).  Where the applicant sets forth the documents it desires, the information it expects to find, and the reasons it would use the documents, the court can reasonably conclude that a foreign proceeding is within reasonable contemplation. *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated on other grounds by *Intel*, 542 U.S. 241.

Here, commencement of a foreign proceeding is contemplated, as noted above. The fact that foreign proceedings have not yet commenced is of no moment.  Indeed, in *Intel*, the Supreme Court held that "Section 1782(a) does not limit the provision of judicial assistance to pending [or imminent] adjudicative proceedings."  542 U.S. at

258. The *Intel* Court held that Section 1782(a) should be read only to require that it be "within reasonable contemplation" that the evidence sought would be used in a dispositive proceeding." *Id*. (citing *In re Crown Prosecution Serv*., 870 F.2d 686, 691; *see also In re Letters Rogatory Issued by the National Court of First Instance in Commercial Matters N.23 of the Fed. Capital of the Argentinean Republic*, 144 F.R.D. 272, 277 n.4 (3d Cir. 1992) (rejecting argument that a "pending" proceeding is required under Section 1782); *In the Matter of the Application of Oxus Gold PLC For Assistance Before a Foreign Tribunal*, 2007 U.S. Dist. LEXIS 24061, at *18 (D.N.J. April 2, 2007) (requirements of Section 1782 satisfied where applicant alleged that claim would be litigated in "near future").

Thus, this factor also favors granting the requested discovery.

### c)   Kotaro Shimogori Resides in and Can Be Found in the Eastern District of California.

Kotaro Shimogori lives and resides at 1506 Gorman Drive, Carmichael, California, which is in Sacramento County and in this district. Respondent Shimogori satisfies the statutory requirement that he "resides or is found" in this district. (Lee Decl. at ¶ 12.)

As such, Respondent is within this Court's jurisdiction and subject to its authority over the requested discovery sought by Applicant.

In sum, Deloraze satisfies the three statutory requirements of Section 1782 as well as the policy aims of the statute. Accordingly, discovery pursuant to Section 1782 is appropriate and the Court should grant Deloraze's Application.

### 2.   The Discretionary Factors Favor Granting the Requested Discovery

All four of the *Intel* discretionary factors weigh in favor of granting Deloraze's requested discovery from Respondent.

### a)   Jurisdictional Reach of the Foreign Tribunal

The first discretionary factor weighs in favor of Deloraze's application because

Respondent will not be a party to the proceedings contemplated in the High Court of London. As the Supreme Court noted: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. As such, relief under Section 1782(a) may not be warranted where the relevant tribunal does not need the assistance. *Id.*

In contrast, here, Respondent Shimogori possesses evidence relevant in the foreign proceedings, but will not be a party there. Indeed, Respondent Shimogori will not be brought before any foreign tribunal for the purpose of obtaining the evidence currently in its possession, nor is the discovery sought from him within the jurisdictional reach of the High Court of London. Nonetheless, documents in his possession are directly relevant to Applicant's contemplated claims in the High Court of London. This weighs in favor of granting the Application.

### b) Nature and Receptivity of Foreign Tribunal

The second discretionary factor also weighs in favor of the requested discovery. Under this factor, a court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court assistance." *Intel*, 542 U.S. at 264.

There is no reason to believe that the High Court of London would be unreceptive to this Court's grant of the discovery sought. Therefore, there is no reason to believe that the High Court of London would object to this Court's assistance with discovery that will, by providing information concerning the transfers of Applicant's funds, facilitate the foreign proceedings and the potential recovery of those funds.

Further, the courts have held that the liberal policy of granting assistance favors allowing a petitioner the discovery sought so that the foreign court itself may determine the admissibility or relevance of the evidence obtained. *See In re Euromepa S.A.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995) (explaining that "a district

court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," and that "[a]bsent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'"); *In re Application of Grupo Qumma*, No. M 8-85 (DC), 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first."). "Parties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can be offset by reliable evidence that the tribunal would reject the evidence." *Government of Ghana v. ProEnergy Servs.*, LLC, 2011 U.S. Dist. LEXIS 75029 at *12 (W.D. Mo. June 6, 2011) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-100 (2d. Cir.1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"). Here, there is no evidence that the High Court of London would reject evidence obtained from Respondent Shimogori pursuant to Section 1782.

### c) Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

This discretionary factor examines "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65; *see also, In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*, Case No. M19-88, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006). There is nothing to suggest that Deloraze's Application is an attempt to circumvent foreign proof-gathering restrictions. The requested discovery is centrally relevant to the contemplated proceeding in the High

Court of London and would not conflict with or circumvent any foreign proof-gathering restrictions. Applicant's request here is made in good faith and not for purposes of harassment. *See Brandi-Dohorn v. IKB Deutsch Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). Thus, 28 U.S.C. § 1782 is a proper and necessary method by which to obtain the critical evidence sought by Applicant.

### d) Unduly Intrusive or Burdensome Request

Under this discretionary factor, a court must consider whether the discovery sought is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 265 ("unduly intrusive or burdensome requests may be rejected or trimmed").

The narrowly tailored discovery proposed under the subpoenas will not be onerous for Respondent Shimogori. *See* Application, Exhs. 1-3. In this instance, Applicant seeks information and documents from Respondent Shimogori narrowly tailored to (1) D-Client's transactions and/or the payments owed to Applicant; (2) communications with and documents relating to PDN's business bank account and merchant account with Equity Bank Limited, including but not limited to PDN's merchant agreement, documents relating to PDN's direct processing relationship with Equity Bank Limited, and any agreements that reflect that fees and/or fines would be passed to PDN's clients, as the merchant of record; (3) communications with and documents relating to $25,000 Visa-related charges and/or fines relating to Applicant; (4) communications with and documents relating to any other fines or fees assessed relating to Applicant's transactions, including, but not limited to a purported $25,000 "Bank Fine" and $15,000 "Fee to the bank representative" claimed by PDN to have been assessed as a result of 5 IDENTIFIED TRANSACTIONS. The discovery sought is relevant to determine the whereabouts of Deloraze's approximately $290,000 in customer payments owed and the details behind PDN's fraudulent payment processing scheme used to misappropriate those funds owed to Deloraze. (*Id.*) It is unlikely that such information or documentation would be voluminous or difficult for Respondent to search for and produce. Accordingly, this factor also weighs in favor

of granting the instant Application.

Deloraze recognizes that the documents it seeks may be confidential and proprietary to PDN. Accordingly, if necessary, Deloraze is willing to enter into an appropriate confidentiality regime governing the confidentiality of Respondent Shimogori's documents.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant Applicant's leave to issue and serve on Respondent Shimogori the discovery attached to its Application as Exhibits 1-3.

DATED:   April 11, 2024

**LAW OFFICES OF MICHAEL JASON LEE, APLC**

By: */s/ Michael Jason Lee*
　　Michael Jason Lee (SBN 206110)
　　Attorney for Applicant
　　DELORAZE LIMITED